# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

|  |  |  |
|---|---|---|
| **ALEX HALTIWANGER,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CASE NO. 5:25-CV-156-TES-CHW** |
| **VS.** | : | |
| | : | |
| **Warden GEORGE IVEY,** | : | |
| **Deputy Warden CALPURNIA** | : | |
| **WASHINGTON,** | : | |
| **Commissioner TYRONE OLIVER,[1]** | : | |
| | : | **PROCEEDINGS UNDER 42 U.S.C. §1983** |
| **Defendants** | : | **BEFORE THE U. S. MAGISTRATE JUDGE** |

---

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff Alex Haltiwanger, a prisoner at the Montgomery State Prison in

Mount Vernon, Georgia, filed a 42 U.S.C. § 1983 complaint (ECF No. 1) followed by an

amended complaint (ECF No. 6). Plaintiff has also filed a motion to proceed *in forma*

*pauperis* ("IFP") (ECF No. 2), a "motion for an extension" (ECF No. 5), and two motions

---

[1] Plaintiff initiated this civil action by filing a complaint. ECF No. 1. Plaintiff then filed
an amended complaint. ECF No. 6. Plaintiff's amended complaint (ECF No. 6) is now
the operative complaint in this civil action. *See Schreane v. Middlebrooks¸* 522 F. App'x
845, 847 (11th Cir. 2013) (per curiam) (noting that generally, an amended complaint
supersedes the original complaint unless the amended complaint specifically refers to or
adopts the original complaint); *Barber v. Krepp,* 680 F. App'x 819, 821 n.2 (11th Cir.
2017) (declining to consider allegations in *pro se* petitioner's initial pleading since it would
have been superseded by the subsequent amended pleading). In his amended complaint,
Plaintiff removes Sergeant Lewis and Officer Swint as Defendants and adds Georgia
Department of Corrections Commissioner Tyrone Oliver as a Defendant. ECF No. 6 at 1.
Therefore, the Clerk of Court is **DIRECTED** to terminate Defendants Lewis and Swint
and add Commissioner Tyrone Oliver as a Defendant to this civil action.

requesting the appointment of counsel (ECF Nos. 4 and 7).   As outlined below, Plaintiff's motion to proceed IFP (ECF No. 2) is **GRANTED**, but his motion for an extension of time (ECF No. 5) and motions requesting the appointment of counsel (ECF Nos. 4 and 7) are **DENIED**.   Upon review of Plaintiff's amended complaint (ECF No. 6), Plaintiff may proceed with his Eighth Amendment failure to protect claims against Defendants Ivey and Washington for further factual development.   However, it is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice** pursuant to § 1915A(b)(1) for failure to state a claim for which relief may be granted.

## MOTION FOR LEAVE TO PROCEED IFP

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a).   ECF No. 2.   As it appears Plaintiff is unable to pay the cost of commencing this action, his application to proceed IFP is hereby **GRANTED**.

Even if a prisoner is allowed to proceed IFP, he must nevertheless pay the full amount of the $350.00 filing fee.   28 U.S.C. § 1915(b)(1).   If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.   If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.   Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee.   28 U.S.C. § 1915(b)(4).   In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

2

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

### III. Directions to Plaintiff's Custodian

Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### IV. Plaintiff's Obligations Upon Release

Plaintiff should keep in mind that his release from incarceration/detention does not

release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained.  If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law.   Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## MOTIONS FOR THE APPOINTMENT OF COUNSEL

Plaintiff has motioned this Court to appoint him an attorney.   ECF Nos. 4 and 7. A district court "may request an attorney to represent any person unable to afford counsel."[2]   28 U.S.C. § 1915(e)(1).   There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit.  *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam) (citations omitted).   Appointment of counsel is "instead a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner."   *Id.* (citations omitted).   In determining whether a case presents extraordinary circumstances, the Court considers

(1) the type and complexity of the case; (2) whether the plaintiff is capable

---

[2] The statute, however, does not provide any funding to pay attorneys for their representation or authorize courts to compel attorneys to represent an indigent party in a civil case.  *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989); *Taylor v. Pekerol*, 760 F. App'x 647, 651 (11th Cir. 2019) (per curiam) (citations omitted) (stating that the district court has no "inherent power" to compel counsel to represent a civil litigant and § 1915(e)(1) provides no such authority).

of adequately presenting his case; (3) whether the plaintiff is in a position to adequately investigate the case; (4) whether the evidence "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination"; and (5) whether the appointment of counsel would be of service to the parties and the court "by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." The District Court may also inquire into whether the plaintiff has made any effort to secure private counsel.

*DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The Court has considered Plaintiff's motion and—after applying the factors set forth above—concludes that appointed counsel is not justified. Plaintiff has demonstrated the ability to litigate his case, including filing pleadings and motions sufficiently setting out his contentions to allow review by this Court. Plaintiff's case is not complex. Additionally, at this early stage in the litigation, it is unclear if the case will proceed to trial. Thus, there is no basis to conclude that counsel will be needed for the presentation of evidence or cross examination of witnesses. Plaintiff, "like any other litigant[], undoubtedly would [be] helped by the assistance of a lawyer, but [his] case is not so unusual" that appointed counsel is necessary. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Accordingly, Plaintiff's motions seeking appointed counsel (ECF Nos. 4 and 7) are **DENIED**. Should it later become apparent that legal assistance is required in order to avoid prejudice to Plaintiff's rights, the Court, **on its own motion**, will consider assisting him in securing legal counsel at that time. Consequently, there is no need for Plaintiff to file additional requests for counsel.

## MOTION FOR AN EXTENSION

Plaintiff has filed a "Motion for Extension".  ECF No. 5.  Plaintiff requests that the Court "grant [him] a[n] extension until[] legal counsel is provided" or until he finds legal counsel.  *Id*.  At the time of filing his motion for an extension of time, Plaintiff had no set deadline to submit anything further to the Court nor had the Court ordered Plaintiff to complete any tasks.   Accordingly, Plaintiff's motion for an extension of time (ECF No. 5) is **DENIED** as moot.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.    Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.   28 U.S.C. § 1915A(a).  Courts must also screen complaints filed by a plaintiff proceeding IFP.  28 U.S.C. § 1915(e).  Both statutes apply in this case, and the standard of review is the same.  "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed."  *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted).  On preliminary

review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id*. (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id*. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v.*

*Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

II.    <u>Plaintiff's Allegations</u>

Plaintiff's claims arise from his incarceration at Hancock State Prison in Baldwin County, Georgia.   ECF No. 6 at 2.   Plaintiff states that he arrived at Hancock State Prison on January 4, 2024, and that, two days after his arrival, he was severely beaten with "poles broomsticks and canes" by other inmates.   *Id*.   The following morning during inspection, Plaintiff "informed Warden George Ivey and Deputy Warden Calpurnia Washington that his life was in danger."   *Id*.   Plaintiff complains that "the inspection team left the building without moving [him] from the unit to saf[e]ty."   *Id*.   Plaintiff states that at 11:00 that night, he was again assaulted by the same prisoners and "suffered swollen and busted eyes swollen and busted lips as well as severe swelling to the head."   *Id*. at 2-3.   A second, separate assault occurred at 2:00 a.m. of the following morning, during which Plaintiff was beaten, stabbed, and "left uncon[s]cious on the floor of the shower area."   *Id*. at 3. Plaintiff states that after he regained consciousness, his attackers "threatened to take Plaintiff's life if he told anything."   *Id*.   The next morning during inspection, "Warden George Ivey saw [Plaintiff] severely swollen and beaten and asked what happened," to which Plaintiff responded, "To tell you that information can get me killed."   *Id*.   Plaintiff complains that Defendants Ivey and Washington "left the annex housing building leaving

the Plaintiff in the annex building knowingly knowing that most likely the Plaintiff will be attacked again." *Id*. Plaintiff states that "later that night at 8:15pm, [he] was attacked again in the shower," and his attackers "beat the Plaintiff nearly uncon[s]cious with poles sticks and stomping the Plaintiff's head." *Id*. The following morning, January 8, 2024, Plaintiff was removed from the annex housing unit and placed in "the solitary confinement housing unit." *Id*.

Plaintiff further complains that during his time in segregation, he was "denied the right to see medical." *Id*. He states he "filed request forms and received no answer from medical person[n]el". *Id*. at 3-4. Plaintiff complains that "after a month [his] head eyes lips face was still badly swollen and bruised", that he "was still in extreme pain", that he "was having bad dizzy spells", and that "he felt as if he had a concussion". *Id*. at 4. He states that he complained to medical personnel about these symptoms but received "no medical attention". *Id*. Plaintiff alleges that "the head nurse finally sent Plaintiff … to the hospital to be looked at." *Id.* While there, Plaintiff was given an MRI but was not informed of the results. *Id*. Plaintiff was returned to segregation at Hancock State Prison until his transfer to a different prison "a month or more" later. *Id*. at 4-5. Plaintiff raises claims that the Defendants failed to protect him from inmate assaults, that he was denied "adequate and immediate medical attention", and that his rights were violated "by denying [his] grievances without properly heaving [his] case befor[e] an adequate investigation was conducted". *Id*. at 5. Plaintiff seeks declaratory and injunctive relief as well as damages and the costs of his lawsuit. *Id*. at 6.

III.   <u>Plaintiff's Claims</u>

A.   <u>Plaintiff's claims against Defendant Oliver</u>

Plaintiff names the Commissioner of the Georgia Department of Corrections, Tyrone Oliver, as a Defendant.   ECF No. 6 at 1.   In so doing, Plaintiff states that Defendant Oliver "is legally responsible for the overall operation of the Department [of Corrections] and each institution under its jurisdiction".   *Id*.   Plaintiff does not mention Defendant Oliver anywhere in his factual allegations, nor does he state that Defendant Oliver had any direct involvement in or any direct knowledge about the events that happened at Hancock State Prison in January 2024.   *See id*. at 1-6.

A district court properly dismisses claims against a defendant when the plaintiff, other than naming the defendant in the caption of the complaint, fails to state any allegations that connect the defendant with an alleged constitutional violation.   *See Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (affirming dismissal of defendants that plaintiff failed to "associate" with an alleged constitutional violation) (citing *Pamel Corp. v. P.R. Highway Auth*., 621 F.2d 33, 36 (1st Cir. 1980)) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) ("section 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation"); *Butler v. Georgia,* No. 22-10291, 2022 WL 17484910, at *2 (11th Cir. Dec. 7, 2022) ("The plaintiff's allegations must connect the defendants with the alleged constitutional

violation."). Because, here, Plaintiff fails to specifically link Defendant Oliver to any of his allegations of constitutional violations, his claims as to Defendant Oliver should be dismissed.

To the extent Plaintiff is seeking to hold Defendant Oliver liable based solely upon his supervisory role as Commissioner, he has failed to state a claim for relief. "It is well established in [the Eleventh Circuit] that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). Instead, "[s]upervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Id.* (second alteration in original). As previously stated, Plaintiff fails to allege that Defendant Oliver had any direct or indirect involvement in the events about which Plaintiff complains or that Defendant Oliver took any action whatsoever, other than simply being the Commissioner of the Georgia Department of Corrections. Accordingly, it is **RECOMMENDED** that all claims against Defendant Oliver be **DISMISSED** without prejudice for failure to state a claim. *See, e.g., Asad v. Crosby*, 158 F. App'x 166, 171-72 (11th Cir. 2005) (affirming dismissal of supervisory liability claims against two defendants because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation.").

B.    Plaintiff's claim regarding denial of grievances

Plaintiff contends that the Defendants violated his constitutional rights "by denying [his] grievances without properly heaving [his] case befor[e] an adequate investigation was conducted."   ECF No. 6 at 5.   Prisoners do not have any constitutional right to participate in grievance procedures, to have those procedures properly followed, or to any preferred outcome to a filed grievance. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (citations omitted) (affirming dismissal as frivolous prisoner's claims that he was denied use of the prison's grievance procedure and holding that an inmate has no constitutionally-protected liberty interest in access to that procedure); *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) (prison officials' failure to respond to prisoner's letters and grievances and to follow prison regulations regarding grievance responses did not implicate constitutional concerns).

Plaintiff also has no constitutional right to any sort of internal investigation by the Defendants into his grievances. *See, e.g., DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (concluding plaintiff "ha[d] no substantive right of any kind to an investigation of her excessive force complaint by the Sheriff's Office, much less one created by the Constitution"; further concluding plaintiff

had "no constitutionally protected liberty or property interest" "to an internal investigation by the Sheriff's Office of her complaints of police brutality"); *Stringer v. Doe*, 503 F. App'x 888, 890-91 (11th Cir. 2013) (per curiam) (finding no substantive due process right to an internal investigation by law enforcement officials).

Thus, to the extent Plaintiff raises a §1983 claim based on the grievance process, contends that he had a constitutional interest in a particular outcome of the grievance process, or that he had a constitutional right to an internal investigation to be conducted by the Defendants as a response to his grievances, Plaintiff fails to state a claim for relief. Accordingly, it is **RECOMMENDED** that Plaintiff's claims regarding the handling of his grievances be **DISMISSED** without prejudice.

C.      Plaintiff's claim of failure to protect from prisoner assaults

Plaintiff raises a claim that the Defendants failed to protect him from prisoner assaults in violation of his rights under the Eighth Amendment.   ECF No. 6 at 2-3 and 5. The Eleventh Circuit has held the Eighth Amendment "impose[s] a duty on prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Mosley v. Zachery*, 966 F.3d 1265, at 1270 (11th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).      This "includes 'protecting prisoners from violence at the hands of other prisoners.'" *Id*. (quoting *Farmer*, 511 U.S. at 833). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety."   *Id.* at 834.   To establish a § 1983 claim for deliberate indifference to safety under the Eighth Amendment, a plaintiff must

13

show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019).

When examining the first element—a substantial risk of serious harm—courts use an objective standard. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds Twombly*, 550 U.S. at 561-63.   In the prison setting, a risk of harm to some degree always exists by the nature of it being a prison. *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga,* 400 F.3d 1313, 1323 (11th Cir. 2005). Thus, successful failure to protect claims will generally require some further reason— beyond a plaintiff feeling threatened by his incarceration with other offenders convicted of violent and/or gang-related offenses—that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility of serious harm.  *See Marbury*, 936 F.3d at 1236. A plaintiff must "show conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Id.* at 1233 (internal quotation marks omitted). "Plaintiffs can make this showing by demonstrating either a 'general threat' to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a 'specific threat' to the prisoner." *Spradlin v. Toby*, No. 5:23-cv-328 (MTT), 2024 WL 3881483, at *4 (M.D. Ga. Aug. 19, 2024) (quoting *Marbury*, 936 F.3d at 1233, 1235). To constitute a substantial risk of serious harm, there must be "a strong likelihood, rather than a mere possibility, of grievous injury." *Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024) (internal quotation marks omitted).   Moreover, the risk must be specific and imminent; "a

generalized awareness of risk in these circumstances does not satisfy the subjective awareness requirement." *Carter v. Galloway,* 352 F.3d 1346, 1350 (11th Cir.2003).

"To establish the second element—deliberate indifference—a plaintiff must [show] that the defendant: (1) 'was subjectively aware that the inmate was at risk of serious harm'; (2) 'disregarded that risk'; and (3) 'acted with subjective recklessness as used in the criminal law.'" *Spradlin*, 2024 WL 3881483, at *4 (quoting *Wade*, 106 F.4th at 1255). To satisfy the subjective awareness component, a plaintiff must show that the defendant was "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ] also dr[ew] the inference." *Marbury*, 936 F.3d at 1233 (internal quotation marks omitted). Whether a risk has been disregarded is an objective inquiry, requiring a plaintiff to show that the defendant "responded to the known risk in an unreasonable manner, in that he ... knew of ways to reduce the harm but knowingly or recklessly declined to act." *Id.* (internal quotation marks omitted). To "prove that the defendant acted with subjective recklessness as used in the criminal law," a "plaintiff must show that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm[.]" *Wade*, 106 F.4th at 1255 (internal quotation marks omitted). However, even if a defendant knows of a risk but "respond[s] reasonably" to that risk, he "cannot be found liable under the Eighth Amendment[.]" *Id.* (internal citations and quotation marks omitted).

To establish the final element—causation—the "plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's

injury." *Marbury*, 936 F.3d at 1233 (internal quotation marks omitted). "This causal element requires proof that the officer (1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded." *Nelson*, 89 F.4th at 1298 (internal quotation marks omitted).

Here, Plaintiff alleges that on the evening of January 6, 2024, he was "severely beaten with poles broomsticks and canes" by other inmates and the next morning he informed Defendants Ivey and Washington that "his life was in danger". ECF No. 6 at 2. Plaintiff complains that the Defendants "left the building without moving [him] from the unit to saf[e]ty." *Id.* Plaintiff states that on the night of January 7, 2024, he was a victim of two more separate assaults by prisoners in the unit. *Id.* As a result of the first assault that night he "suffered swollen and busted eyes swollen and busted lips as well as severe swelling to the head" and that during the second assault, "the attackers began beating and stabbing the Plaintiff" to where he "was left uncon[s]cious on the floor in the shower area." *Id.* at 2-3. Plaintiff states that the morning following those assaults, Defendant Ivey saw him "severely swollen and beaten and asked what happened" to which Plaintiff replied "to tell you that information can get me killed". *Id.* at 3. Plaintiff complains that Defendants Ivey and Washington again left him in the annex building "knowing most likely that Plaintiff will be attacked again" and Plaintiff was attacked again on January 8, 2024. *Id.*

As the Court is required to accept Plaintiff's allegations as true in preliminary

screening, Plaintiff's allegations are sufficient to indicate that he was at a substantial risk of serious harm, that Defendants Ivey and Washington had, at a minimum, a subjective awareness that Plaintiff was at risk of harm, that Defendants Ivey and Washington failed to take any action to alleviate Plaintiff's risk of harm, and that Plaintiff suffered injury due to Defendants Ivey and Washington's failure to act.    *See Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003); *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1255.    Accordingly, Plaintiff's Eighth Amendment claim against Defendants Ivey and Washington for deliberate indifference to safety may proceed for further factual development.

  D. <u>Plaintiff's claim regarding denial of medical attention</u>

  Plaintiff also raises a claim that he was denied medical attention . ECF No. 6 at 3-5.    The standard for cruel and unusual punishment in the medical care context is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer*, 511 U.S. at 828.    However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment".    *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Estelle*, 429 U.S. at 105).    To state a claim for deliberate indifference to serious medical needs, a plaintiff must allege "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference

and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citation omitted).    The first prong is objective, and

> a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. . . .    In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks and citations omitted).

To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'"    *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839). Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."    *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837).

Liability cannot be based on simple negligence or medical malpractice, but rather on some sort of conscious disregard for a serious and imminent risk.    *Farmer*, 511 U.S. at 834; *Harris*, 941 F.2d at 1505 (explaining that mere allegations of negligence or malpractice do not amount to deliberate indifference). "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or

course of treatment" will not support a claim for deliberate indifference.    *Harris*, 941 F.2d at 1505 (citation omitted).    Whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore does not amount to deliberate indifference under the Eighth Amendment."    *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted) (concluding that a dispute between two medical doctors about the adequacy of medical treatment provided -- not about whether treatment was provided at all -- suggested only medical negligence and was no grounds for section 1983 liability).    Instead, a plaintiff must demonstrate that the defendant's response to an objectively serious medical need "was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citations omitted); *see Estelle*, 429 U.S. at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").    As the Eleventh Circuit has explained that "deliberate indifference is not a constitutionalized version of common-law negligence." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020).

> To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that the deliberate indifference standard . . . is far more onerous than normal tort-based standards of conduct sounding in negligence, and is in fact akin to subjective recklessness as used in the criminal law.    With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be perfect, the best obtainable, or even very good.    Rather, we have emphasized, [m]edical treatment violates the

[E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.

*Id.* (quotation marks and citations omitted).

The final prong simply requires "that a defendant have a causal connection to the constitutional harm." *Goebert*, 510 F.3d at 1326 (citation omitted) (explaining that "as with any tort claim, [plaintiff] must show that the injury was caused by the defendant's wrongful conduct").

Plaintiff's pleadings do not establish all the elements of a deliberate indifference to a serious medical need claim. As to the objective standard, Plaintiff states that he had bruising, swelling, pain, dizzy spells, and "felt as if he had a concussion". ECF No. 6 at 3-4. A month after the attacks, "the head nurse finally sent Plaintiff... to the hospital" where Plaintiff "was given a MRI". *Id.* at 4. Plaintiff states hospital personnel never informed him of the results of the MRI and he was immediately released from the hospital back to Hancock State Prison. *Id.* These allegations are sufficient to identify a medical need that posed a risk of substantial serious harm.

Plaintiff has failed, however, to establish the subjective element of the deliberate indifference inquiry. Plaintiff states that he filed requests to be seen by the medical staff and alleges that he personally complained to medical personnel that he "felt as if he had a concussion." ECF No. 6 at 3-4. Plaintiff makes no factual allegation that he specifically informed any named Defendant as to his medical concerns or that any of his medical concerns were otherwise communicated to the Defendants. *See id*. Indeed,

Plaintiff does not allege that he saw or had any communication with any named Defendant after he was placed in segregation following the third assault. *Id*. To establish that a particular "defendant acted with 'subjective recklessness as used in the criminal law'" the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1255. "'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" *Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)). Nothing within Plaintiff's allegations demonstrates that any of the named Defendants had knowledge about any medical risk to the Plaintiff. Without knowledge of a risk, the Defendants cannot be deliberately indifferent.

Because Plaintiff has not met the subjective element of a deliberate indifference to a serious medical need claim, he cannot satisfy the third element that requires "a causal connection to the constitutional harm." *Goebert*, 510 F.3d at 1326 (citation omitted). In sum, Plaintiff has failed to satisfy all the elements necessary to state a claim for a deliberate indifference to a serious medical need against any Defendant, and thus it is **RECOMMENDED** that this claim be **DISMISSED** without prejudice.

IV.    Conclusion

For all the reasons set forth above, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 7) is **GRANTED**, but his motion for an extension of time (ECF No. 5) and

motions requesting the appointment of counsel (ECF Nos. 4 and 7) are **DENIED**.   Plaintiff may proceed with his Eighth Amendment failure to protect claims against Defendants Ivey and Washington for further factual development.   It is **RECOMMENDED** that all claims against Defendant Oliver and all remaining claims against Defendants Ivey and Washington be **DISMISSED without prejudice** pursuant to § 1915A(b)(1) for failure to state a claim for which relief may be granted.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III., United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Objections to the Recommendation are limited in length to twenty (20) pages. A party seeking permission to exceed these limitations shall do so by filing a written motion no later than five (5) days in advance of the deadline for filing objections and by specifying the number of pages requested.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Warden George Ivey and Deputy Warden Calpurnia Washington, it is

accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendant is similarly advised that she is expected to diligently defend all allegations made against her and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by

mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension

is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery

period begins unless otherwise directed by the Court.

   **SO ORDERED and RECOMMENDED**, this 11th day of July, 2025.


       s/ Charles H. Weigle     
       Charles H. Weigle
       United States Magistrate Judge