IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ALEX HALTIWANGER, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 5:25-cv-156-TES-CHW |
| | : | |
| Warden GEORGE IVEY, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Plaintiff Alex Haltiwanger, a state inmate, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983 regarding his confinement at Hancock State Prison. (Docs. 1, 6). Defendants Warden George Ivey and Calpurnia Washington have filed a motion to dismiss citing Plaintiff's failure to exhaust. (Doc. 23). Plaintiff has responded and opposes the motion. (Doc. 27, 31). As discussed below, Defendants have shown that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Therefore, it is **RECOMMENDED** that Defendants' motion to dismiss (Doc. 23) be **GRANTED**.

## I.    Background

Plaintiff brought this action on March 24, 2025, alleging constitutional violations against multiple defendants regarding his incarceration at Hancock State Prison ("HSP"). (Doc. 1). Following screening of Plaintiff's complaint and amended complaint under 28 U.S.C. § 1915A, the Court allowed Plaintiff to proceed on his failure to protect claim

1

against Defendants. (Doc. 8). The claim stems from an incident that occurred in January 2024, when Plaintiff alleges that he was attacked by multiple inmates. (Doc. 1, p. 4).

Defendants filed a motion to dismiss because Plaintiff did not properly exhaust his administrative remedies before bringing suit. (Doc. 23). In his response, Plaintiff argues that he was unable to properly exhaust. (Doc. 27).

## II.     Failure to Exhaust

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, of any other federal law. 42 U.S.C. § 1997(e)(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed 'to eliminate unwarranted federal-court interference with the administration of prisons'" by "'seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (quoting *Woodford*, 548 U.S. at 93).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that

light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Turner*, 541 F.3d at 1082. Second, if the complaint is not dismissed under step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1082–83 (internal citations omitted). As failure to exhaust is an affirmative defense under the PLRA, "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.*

The grievance procedure applicable in this case is set by the Georgia Department of Corrections Standard Operating Procedure No. 227.02 (Doc. 23-1, p. 7). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within ten days of the grievable issue. (*Id.* at 14). Prisoners may file outside of the 10-day window if they show good cause. (*Id.*). The original grievance is then screened by prison staff, and typically either rejected or accepted for processing. (*Id.* at 5). The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice. (*Id.* at 17). Once the prisoner receives the warden's response, or when the time allowed for the warden to respond expires without a response, the prisoner must proceed to step two by filing a "Central Office Appeal" within seven days. (*Id.* at 20). The grievance procedure

then contemplates a 120-day period in which the Commissioner may give a response. (*Id.* at 21).

## A. Turner *Step One*

In considering whether dismissal for failure to exhaust is appropriate, under *Turner*'s step one the Court must consider first all the alleged facts, construed in favor of Plaintiff when the facts conflict. In his complaint, Plaintiff acknowledges that GDCP has a grievance procedure and claims that he submitted a grievance. (Doc. 1, p. 2). In his response to Defendants' motion, Plaintiff acknowledges that he did not appeal the grievance, but he argues that an appeal form was not made available to him. (Doc. 27). Based on his own allegations, Plaintiff complied with the applicable grievance procedure, at least to the extent that it was available to him. As such, and in taking Plaintiff's version of the facts as true as required by *Turner*'s first step, Plaintiff's claim survives at step one.

## B. Turner *Step Two*

At *Turner*'s second step, any disputed facts must be examined to determine whether Plaintiff exhausted the available remedies prior to filing suit. In support of their failure to exhaust argument, Defendants provide the applicable grievance procedure, Plaintiff's movement history, Plaintiff's grievance history, a copy of Plaintiff's grievance relating to this case, and the declaration of Rashedah Mitchell, the Grievance Coordinator at HSP. The evidence presented by the parties shows that Plaintiff filed the following grievances while incarcerated at HSP:

Grievance No. 363132: Plaintiff filed Grievance No. 363132 on January 18, 2024. (Doc. 23-1, pp. 29–30). In this grievance, Plaintiff complained that he had been assaulted by other inmates over a three-day period earlier that month. (*Id.*). This grievance is listed as "rejected" for containing more than one issue/incident. (*Id.*, 23-1, p. 31). At the bottom of the Warden's rejection is that the offender refused to sign on January 23, 2024, and received an appeal form. (*Id.*).

Grievance No. 363134: Plaintiff filed Grievance No. 363134 on January 18, 2024. (*Id.*, pp. 29, 39). In this grievance, Plaintiff complained that an officer refused to change his room assignment after Plaintiff was assaulted by other inmates. (*Id.*, p. 39). This grievance is listed as "denied" because it was addressed by his prior grievance. (*Id.*). Plaintiff acknowledged receipt of this denial on January 25, 2024. (*Id.*, p. 40).

Grievance No. 363276: Grievance No. 363276, filed on January 23, 2024, concerns missing or confiscated property. (*Id.*, pp. 29, 47). Plaintiff asserted that he was finally removed from his room without being able to take his personal belongings. (*Id.*, p. 47). This grievance is listed as "resolved" due to being dropped by Plaintiff. (*Id.*, pp. 29, 47, 50).

Grievance No. 364899: Plaintiff filed Grievance No. 364899 on March 4, 2024, concerning medical treatment. (*Id.*, p. 60). The grievance is listed as "denied." (*Id.*).

Defendants do not dispute that Grievance Nos. 363132 and 363134 relate to the incident in this case. *See* (Doc. 23, p. 4). Rather, Defendants assert that Plaintiff did not properly exhaust his administrative remedies because he did not file a Central Office Appeal from either of these grievances.

The SOP requires that Plaintiff file a Central Office Appeal within seven days of receiving the Warden's response. (Doc. 23-1, p. 20). Plaintiff did not do so. The PLRA requires exhaustion *prior* to filing suit. 42 U.S.C. § 1997e(a). The filing of Plaintiff's complaint serves as the marker for when he is required to have completed exhaustion of available administrative remedies as required. *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000). In *Harris*, the Eleventh Circuit, sitting *en banc*, considered what the word "brought" means in the context of the PLRA requirements and an amended complaint. The Court concluded that "'brought' means 'commenced.'" *Id*. at 974. Amending or supplementing the complaint attempting to show exhaustion which was not complete when the action commenced will not suffice to meet the exhaustion requirement. *Id*. at 982–984 (discussing FED. R. CIV. P. 15 and other examples of where amendment will not cure jurisdictional requirements needed to bring suit). Pursuant to *Harris*, the entire administrative process, from initial grievance to the appeal outcome, needed to have been completed before Plaintiff filed this action on August 12, 2023. (Doc. 1).

Under the PLRA, Plaintiff must have properly exhausted all available administrative remedies "so that the agency addresses the issues on the merits." *Woodford*, 548 U.S. at 90; *see Carson v. Hall*, No. CV 317-054, 2018 WL 3432549, at *5 (S.D. Ga. June 18, 2018)

("The purposes of the PLRA's exhaustion requirement are not achieved where officials do not review the merits of a prisoner's complaint.") (citing *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005)), <u>report and recommendation adopted,</u> No. CV 317-054, 2018 WL 3429717 (S.D. Ga. July 16, 2018). In this case, based on his own allegations, Plaintiff did not properly exhaust his administrative remedies because he did not file any Central Office Appeal. (Doc. 27); (Doc. 30, p. 4).

Plaintiff does appear to argue that any failure to exhaust should be excused because the appeal process was unable to him because he was in segregation and HSP did not have appeal forms. (*Id.*). "A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner*, 541 F.3d at 1084 (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–23 (11th Cir. 2007). Once a defendant shows that an administrative remedy is available, "the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quotations and citations omitted). Courts have outlined three different ways a plaintiff can show that administrative remedies are unavailable:

> The modifier "available" means that an administrative remedy must provide the possibility of some relief. *Id.* at 643. There are three kinds of circumstances that make an administrative remedy unavailable. *Id.* First, an administrative remedy is unavailable when the administrative procedure operates as a simple "dead end," with officers unable or consistently

unwilling to provide any relief to aggrieved inmates. *Id.* For example, if a handbook required inmates to submit grievances to a particular office and the office disclaims the capacity to consider petitions or if officials have authority but decline to exercise it, then it is unavailable. *Id.* Second, a remedy is unavailable when an administrative scheme is so opaque that it is incapable of use. *Id.* The mechanism may exist to provide relief, but no ordinary prisoner can discern or navigate it. *Id.* at 643–644. Third, a remedy is unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, and intimidation. *Id.* at 644.

*McDowell v. Bowman*, 2022 WL 4140331, at *3 (11th Cir. Sept. 13, 2022) (citing *Ross v. Blake*, 578 U.S. 632 (2016)).

Defendants carried their burden by pointing to the GDC's two-step administrative process. (Docs. 23, 32). To survive, Plaintiff must have shown that HSP's grievance procedure was both subjectively and objectively unavailable. He has not done so.

Plaintiff's argument that he could not appeal because no appeal forms were available would seemingly fall under the first *Ross* exception. However, Plaintiff's assertions that prison officials would not give him an appeal form and that "segregation units almost never have officers working the units making it almost impossible to receive the adequate paperwork and materials needed" is contradicted by the record evidence. (Doc. 27, p. 1). First, the record evidence, in the form of the Warden's response to Grievance No. 363132 and the declaration testimony of Ms. Mitchell, establishes that that Plaintiff received an appeal form along with that grievance's rejection. (Doc. 23-1, pp. 4, 31). Second, his argument that it is almost impossible to receive adequate materials while

8

in segregation is contradicted by Plaintiff's own grievance history. For example, Plaintiff's movement history shows that he was in the same bed from January 16, 2024, to February 7, 2024. (*Id.*, p. 27). Plaintiff filed three grievances during this period and voluntary dropped one. (*Id.*, pp. 27–50). Plaintiff's assertion that it is "almost impossible" to receive documents related to the grievance process is not credible where the record establishes Plaintiff's frequent use of said process. Based on the record before the Court, the grievance process was available to Plaintiff, and he is not excused from the exhaustion requirement.

## CONCLUSION

Because Plaintiff failed to exhaust his administrative remedies as required before bringing this action, it is **RECOMMENDED** that Defendants' motion to dismiss (Doc. 23) be **GRANTED** and that Plaintiff's claims be **DISMISSED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and

9

legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 23rd day of April, 2026

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge